## Bosch, Appellant, *v.* Hoffman.

*Easement—Right of way—Prescription—Adverse use—Act of April 25, 1850, sec. 21, P. L. 569.*

1. Since the Act of April 25, 1850, sec. 21, P. L. 569, no right of way can be acquired by user or prescription to unenclosed woodland.

*Deed—Road appurtenant—Road by necessity.*

2. Where a road is expressly granted and its precise location and limits are fixed and defined by deed, no easement of another road or right of way is created by implication, unless it appears clearly from the surroundings and res gestæ of the grant, that it was the intention of the parties that such easements should be created.

3. No easement of one road upon another road can be created.

4. A way of necessity can be presumed to have been granted, or reserved only when the necessity existed at the time of grant, and this right of way is presumed either to have been granted out of other lands of the grantor, or reserved to the grantor out of the land granted, never out of the land of a stranger. The law does not give a right of way over the land of other persons, to every owner of land who otherwise would have no means of access to it.

Argued Dec. 14, 1909. Appeal, No. 161, Oct. T., 1909, by plaintiff, from judgment of C. P. Carbon Co., June T., 1908, No. 19, for defendants non obstante veredicto in case of Agnes Bosch v. Conrad H. Hoffman et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass for obstruction of an alleged right of way.

At the trial the jury returned a verdict for the plaintiff for $150.

Subsequently the court entered judgment for defendants non obstante veredicto, HEYDT, P. J., filing the following opinion:

Agnes Bosch, the plaintiff, brought suit against the defendants to recover consequential damages caused by the defendants' refusal to permit the plaintiff to pass over a certain way over which she claimed the right of passing.

The plaintiff's right of recovery in this suit depends upon her right to pass over the land of Conrad Hoffman at the point where she was prevented from passing, and this in turn depends upon whether the Boschs had acquired a right of way over the land of the said Conrad Hoffman.

In a suit by the same plaintiff against the same defendants for the same cause of action to No. 29, April Term, 1907, the plaintiff based her right of recovery upon the right to pass over this alleged right of way over the land of Conrad Hoffman, claiming that she had acquired said right by prescription. The court entered a compulsory nonsuit on the ground that since the act of 1850 no right of way could be acquired by user or prescription through uninclosed woodland, the land over which this alleged right of way passes being uninclosed woodland. (For discussion of this subject see opinion filed in said case refusing to take off the compulsory nonsuit.)

In the present suit the plaintiff claimed that she was entitled to this right of way, having acquired it: First, by prescription; second, that the right of way was appurtenant to the Bosch farm; third, that the sale of the Bosch farm created the easement of this disputed road by necessity.

The facts necessary to an understanding of the question involved are briefly these: Wert, Stryker and Murray, by their deed dated July 5, 1878, and duly recorded, conveyed to John Bosch, the husband of the plaintiff, forty-three and one-half acres of land in Kidder township, Carbon county,

Pennsylvania, being part of the Betsey Rice tract, in which deed it is provided that the road known as the "Bark road," commencing near the southwest corner of the John Steiner tract, near the east bank of the Lehigh river, and running in a northwesterly direction, is to be reserved and kept open.

On the east side of the Lehigh river, beginning with the Betsey Rice tract, on the north, in order southwardly, are located the following tracts or surveys: Betsey Rice, Joachim Wigman, John Steiner, William Horsefield and John Christ.

At the time of the conveyance to John Bosch the northern half of the William Horsefield tract was not owned by Wert, Stryker and Murray, the grantors of Bosch.

Joseph R. Wert, Albert Wert and wife, and Thomas S. Murray, by their deed dated September 26, 1885, and duly recorded, conveyed to Conrad N. Hoffman, one of the defendants, ninety acres of land, being the southeastern part of the William Horsefield tract. The "Bark road" referred to in the Bosch deed extends from the northern part of the Betsey Rice tract southwardly through the Joachim Wigman tract, and the John Steiner tract, and ends at or near the ferry at the Lehigh river at the southwestern corner of the John Steiner tract, or the northwestern corner of the William Horsefield tract and reaches a public road known as the old state road on the John Christ tract near the red schoolhouse. At or near the red schoolhouse Conrad Hoffman had erected bars across this right of way to keep in his own cattle and to keep out the cattle of strangers.

On June 24, 1906, the plaintiff, Agnes Bosch, with her husband, John Bosch, and her daughter, Agnes Bosch, left home in the morning, went to White Haven to attend church services, and on their return home, when they came to Conrad Hoffman's land, the defendants, Conrad Hoffman, James Ditterline and Niles Smith, were at the bars and refused to let the Boschs go through those bars unless they would agree to put up the bars every time they passed through.

The Boschs refused to make the promise. The defendants refused to permit them to pass. The plaintiff, who is an old lady, claims that she was compelled, by this action

on the part of the defendants, to walk home by a longer route, from the exertion and fatigue of which journey she became sick and lame, and for these injuries she seeks to recover damages in this suit. In order to recover the plaintiff must prove that she was entitled to pass over this piece of road from the ferry to the red schoolhouse which crosses Hoffman's land.

The plaintiff's contention, to wit, that she had a right to use this road by prescription, cannot be sustained for the reasons set forth in the opinion filed above referred to, and for the further reasons set forth in the charge to the jury in this case.

The second contention is that said road was appurtenant to the land sold to Bosch.

When Wert, Stryker and Murray were the owners of all the tracts in that neighborhood they could use all the tracts in any manner they desired, but it did not create an easement; they used the tracts under the higher right of united ownership. The roads were constructed primarily as log roads leading down to the ferry and were used as such. The alleged easement is not expressed in the deed to Bosch, and it is sought to imply it as attached to the grant. In the deed to Bosch a road is expressly granted and its precise location and limits are fixed and defined by the deed. Where a road is expressly granted and its precise location and limits are fixed and defined by the deed, no easement of another road or right of way is created by implication, unless it appears clearly from the surroundings and the res gestæ of the grant, that it was the intention of the parties that such easement should be created. But the intention of the parties must be gathered from the grant, that is, from the paper writing. If anything appears in the writing which goes to show that it was not the intention of the parties to create an easement, such easement does not exist.

Where the terms of the writing specifically describe the grant as to the particular subject, such description, in all fairness, must be understood to fix the terminus of the grant, and to exclude the creation of an easement by implication.

Where an easement or other right is not expressed and is sought to be implied as attached to the grant of the fee, the same must clearly appear from the intention of the parties as shown by the terms of the grant, the surroundings of the property, and the other res gestæ of the transaction: Fitzell v. Phila., 211 Pa. 1; Neely v. Phila., 212 Pa. 551.

The plaintiff, however, contends that the road from the ferry to the red schoolhouse was appurtenant to the "Bark road"; that the "Bark road" would be useless but for this other road. This position is untenable; this would be creating an easement of one road upon another road; that is, an easement upon an easement, or an appurtenance to another appurtenance.

A mere easement may without words pass as an incident to the principal object of the grant, but property of the same rank or kind as that conveyed in terms cannot be said to be an incident to the principal object of the grant: Investment Co. of Phila. v. Ohio & N. W. Ry. Co. (U. S.), 41 Fed. Repr. 378; 1 Words and Phrases Judicially Defined, p. 479.

A thing corporeal cannot properly be appurtenant to a thing corporeal, nor a thing incorporeal to a thing incorporeal: 1 Words and Phrases Judicially Defined, p. 484.

The thing appurtenant must be of an inferior nature to the thing to which it is appurtenant: 2 Blackstone, 19.

The third position is that when Wert, Stryker and Murray conveyed the land to Bosch, they being also at that time owners of the southern half of the William Horsefield tract, the easement of passing over the Conrad Hoffman tract was created by necessity; that the Bosch farm was located back in the woods, and that there was no way out from the Bosch farm to the public road except over other lands of the grantors. Granted that where the owner of a tract of land fronting upon a public highway sells a portion that is entirely surrounded by the land of the grantor and of strangers, with no outlet except over the lands of the grantor, the grantee is entitled to a right of way over the grantors' lands, unless the situation of the land or the object

for which it is used and conveyed shows that no grant of such right was intended. The difficulty with this position arises not from the law, but from the facts in this case. The grantors of Bosch at the time of this conveyance to him had no title to or interest in the northern half of the William Horsefield tract, where the road from the ferry to the red schoolhouse begins. The grantors of Bosch could not impress a servitude upon the land of a stranger, and since they did have the power to create an easement, the easement in law does not exist.

The owner of land surrounded by land of another, is not entitled to a way of necessity over the surrounding land, when the circumstances are such that no grant or alienation in the nature of a grant, can be presumed: 23 Am. & Eng. Ency. of Law (2d ed.), 16.

A way of necessity can be presumed to have been granted, or reserved only when the necessity existed at the time of grant, and this right of way is presumed either to have been granted out of other lands of the grantor, or reserved to the grantor out of the land granted, never out of the land of a stranger. The law does not give a right of way over the land of other persons, to every owner of land who otherwise would have no means of access to it: Richards v. Railroad Co., 153 Mass. 120.

Necessity is only a circumstance resorted to for the purpose of showing the intention of the parties, and raising an implication of a grant: . . . It is not the necessity which creates the right of way, but the fair construction of the acts of the parties. No necessity will justify an entry upon another's land. If a man can be supposed to hold land without any right of access to it, a grant of it would not convey to the grantee any right to pass over the adjoining land, however necessary it might be to the enjoyment of the thing granted. He would acquire nothing more than his grantor held: Nichols v. Luce, 41 Mass. 102.

One of the definitions of easement in Bouvier's Dictionary is: "A privilege which the owner of one adjacent tenement hath of another existing in respect to their several

tenements, by which that owner against whose tenement the privilege exists, is obliged to suffer or not to do something on or in regard to his own land for the advantage of him in whose land the privilege exists."

Hoffman's land not being adjacent to the land of Bosch could not be impressed with an easement.

From this discussion we reach the irresistible conclusion that Agnes Bosch, the plaintiff, did not have the right to pass over Hoffman's land at the place where the bars were erected. But assuming that we were in error in our line of reasoning on this branch of the case, we would still have to reach the conclusion that the plaintiff is not entitled to recover in this suit. At the trial we submitted to the jury the question of the reasonableness of the bars which were put up by Mr. Hoffman. Under the charge of the court the plaintiff's right to recover depended upon the determination of this question. It is true, under the instruction given, the verdict of the jury would establish the fact that the bars were an unreasonable obstruction.

Under the law it is well settled that where land is subject to a right of way, the owner of the land, for the protection of his lands, may erect gates or bars across the right of way, provided, that he observes a reasonable regard for the convenience of the owner of the right of way: Hartman v. Fick, 167 Pa. 18; Connery v. Brooke, 73 Pa. 80; Kohler v. Smith, 3 Pa. Superior Ct. 176; Washburn on Easements, 264.

At the trial the issue was not raised whether these bars put there by Hoffman were a reasonable or an unreasonable obstruction; there was not a particle of evidence that the bars erected were not reasonable; the plaintiff refused to agree to replace the bars, not for the reason that they were too heavy or unreasonable in any way, but she refused to consent to replace them because she alleged the defendant, Hoffman, did not have the right to place any bars across her right of way.

The court being of the opinion that under the authorities Hoffman had the right to put the bars across the way, and having such right, to demand from the plaintiff the promise

to restore the bars in place after crossing, and she having refused to do so for no other reason than because she claimed he had no right to put them there, the question should not have been submitted to the jury, and the plaintiff is not entitled to recover.

Now, June 11, 1909, the rule for a new trial is discharged; the rule for judgment for the defendants non obstante is made absolute; all the evidence taken upon the trial is certified and filed so as to become a part of the record, and the judgment is entered for the defendants upon the whole record non obstante veredicto.

*Error assigned* was in entering judgment for defendants non obstante veredicto.

*Charles F. Wharen,* with him *James M. Breslin,* for appellant.—Where land is conveyed that cannot be reached without going over the land of the grantor or by trespassing on strangers a way of necessity is implied: Wissler v. Hershey, 23 Pa. 333; Gardner v. Weaver, 11 W. N. C. 544; Com. v. Burford, 73 Atl. Repr. 1064.

The right is also claimed on the theory of user by the common grantors while owning both tracts: Kieffer v. Imhoff, 26 Pa. 438; Phillips v. Phillips, 48 Pa. 178; Church v. Vonneida, 6 Phila. 557; Zell v. First Univ. Society, 119 Pa. 390.

*Frederick Bertolette* and *Laird H. Barber,* for appellee.

OPINION BY BEAVER, J., March 3, 1910:

Prior to January 21, 1857, Messrs. Wert, Stryker and Murray claimed to be the owners of five consecutive tracts of land situate on the Lehigh river in Carbon county, surveyed in pursuance of warrants in the names of Betsy Rice, Joachim Wigman, John Steiner, William Horsefield and John Christ, respectively. On the date above mentioned a deed was made from Murray, Stryker et al. to one Richard Pim in compromise of a certain action of ejectment, then pending in the court of common pleas of Carbon county, brought by Richard Pim against Samuel D. Stryker and a certain Josiah A. Cole, which was compromised and settled upon the terms that the tract

of land in the warrantee name of William Horsefield, containing 406 acres, was to be equally divided between them, each party to execute to the other a quitclaim deed of one-half; the said Samuel D. Stryker to have the half adjoining the tract in the warrantee name of John Christ, which was the southern tract of the series above mentioned, which is the southwest side of the tract, and the said Richard Pim to have the half adjoining a survey in the warrantee name of John Steiner, being the north side of the tract.

July 5, 1878, Wert, Stryker and Murray and their wives conveyed a part of the tract surveyed in the warrantee name of Betsy Rice, being the extreme northern tract of the body of lands above described, to John Bosch, the husband of the plaintiff, in which deed it is provided that the road known as the Bark road, commencing near the southwest corner of the John Steiner tract near the east bank of the Lehigh river and running in a northwesterly direction, is to be reserved and kept open. This road begins at the southwestern corner of the Steiner survey or, as is shown on the draft of the plaintiff and as some of the witnesses testified, at the extreme northwest corner of the William Horsefield, and there is no dispute, as we understand it, that at the time of the purchase of Bosch from Wert, Stryker and Murray there was a road either beginning or terminating at that point and connecting with a ferry which there crossed the river.

The claim is made by the plaintiff that, because of that reservation and because of the necessity of the case, Bosch had a right of way through the northern half of the William Horsefield tract which did not then belong to Wert, Stryker and Murray, but belonged to Richard Pim or his successors in title. It is very clear that Wert, Stryker and Murray having conveyed the title of the northern half of the William Horsefield to Pim in 1857, without reservation of any right of way through the land conveyed, could not have had an easement upon and over the said land and indeed it does not appear that there was any road then in existence over the said land. When, therefore, they made their conveyance to Bosch, they could convey only what they had, and Bosch could not

have an estate or interest or easement in, over or upon the land conveyed by his grantors prior to the time of their conveyance to him. The defendant Hoffman was the owner of a portion of the southern half of the Horsefield tract which was conveyed to him by Wert, Stryker and Murray in 1885; but, in order to reach the lands of Hoffman, it was necessary to cross the northern half of the William Horsefield tract, there being but one road running across the entire width of the tract which connected with the road passing through the portion of the southern half of the tract owned by the defendant Hoffman.

The testimony clearly shows, and there is practically no denial of the fact, that these tracts of land were open woodland from which the timber had been cut and removed and upon which there was a regrowth of the timber in many parts, and that for the purpose of removing the said timber log roads had been opened and used in many directions, the Bark road which led to or from the river being well defined and kept open for public use. There do not seem to have been, so far as the evidence shows, any public roads regularly laid out, through these several tracts, although what is called the Buena Vista road and the state road seem to have been taken for granted as public roads.

A road seems to have been constructed from the Bark road on the John Steiner tract entirely through the William Horsefield tract and connecting with a road on the John Christ tract south of it. Across this road on the land of the defendant bars were erected for the purpose of restraining his own cattle and shutting out the cattle of others. The plaintiff, with her husband and daughter, appeared at these bars, claiming the right to pass through them. This was denied by the defendant Hoffman and a condition annexed to their passage insisted upon—that they could go through only upon the promise that they would restore the bars whenever they passed. The husband seemed to be willing to accede to this, but the wife refused to make the promise and finally persuaded her husband to unite in the refusal. Hoffman insisted upon the condition upon which they should be allowed to pass and they finally turned and retraced their steps, the plaintiff walk-

ing to White Haven and returning to her home by another road on the western side of the river. She claimed to have been overcome by her walk, from which she did not recover for some time, and for damages resulting therefrom she brought suit against the defendant Hoffman and the men who were with him repairing his bars at the time the plaintiff and those accompanying her attempted to pass.

Upon the trial of the case, a verdict was rendered for the plaintiff, but, upon a motion for a new trial and for judgment non obstante veredicto, the court, after mature deliberation and an exhaustive opinion filed, granted the motion for judgment n. o. v. From this final disposition of the case an appeal was taken, and the only assignment of error is the action of the court in making absolute this motion.

In this opinion the court below states the facts more fully than we have done. In it the court says: "In a suit by the same plaintiff against the same defendants for the same cause of action, No. 29, April Term, 1907, the plaintiff based her right of recovery upon the right to pass over this alleged right of way over the land of Conrad Hoffman, claiming that she had acquired said right by prescription. The court entered a compulsory nonsuit on the ground that since the act of 1850 no right of way could be acquired by user or prescription through uninclosed woodland, the land over which this alleged right of way passes being uninclosed woodland. (For discussion of this subject see opinion filed in said case refusing to take off the compulsory nonsuit.)" We do not find, on an examination of the evidence, that the record of this suit was given in evidence, but the testimony is so clear and unequivocal and practically uncontradicted that the lands referred to were uninclosed woodland that it is not difficult to reach the conclusion that, if there was such a suit as the court refers to, the nonsuit was very properly entered; and for the same reason we would reach the conclusion in this case that the plaintiff having acquired no right of way over the defendant's property by prescription, she was not entitled for that reason to recover.

It is equally difficult to understand how the plaintiff could

have claimed a right of way by necessity or by implication over the northern half of the William Horsefield tract which was not owned by the grantors when they made the conveyance to her husband of the tract or parcel of land on the northern tract, of the batch of surveys, surveyed in the warrantee name of Betsy Rice. If she claimed it by an approach from the John Christ tract on the south over the southern half of the William Horsefield survey, there would have been no connection therefrom to the northern line of that survey and, therefore, could not have been claimed, it seems to us, as appurtenant in any way to the tract of land occupied by the plaintiff's husband in the extreme northern tract of the body of lands referred to. From either point of view, therefore, it seems to us that the northern half of the William Horsefield tract was an impassable barrier to the acquisition of any continuous right of way from the Steiner tract on the north of the William Horsefield to the Christ tract on the south of it, or from the Christ tract on the south to the Steiner tract on the north.

This question is so fully argued by the trial judge in his opinion on the motion for judgment n. o. v. that it seems to us to be unnecessary to argue it at length here. Indeed, upon a careful examination of the defendant's points, as presented at the trial, it seems to us that it would have been perfectly proper for the court to have directed a verdict for the defendant, there being practically, under the evidence, no disputed facts as to the material points involved to be submitted to the jury. The case seems to us to be entirely free from difficulty, and we have no hesitation in reaching the conclusion that the judgment was properly entered for the defendant, notwithstanding the verdict, there being no evidence of any kind that the owner of the upper half of the William Horsefield survey ever in any way, by grant, permission or otherwise, vested in the plaintiff or her husband any right of way over his land. There was, therefore, a fatal physical break in the continuity of the plaintiff's claim, even if her legal position, which we need not argue, had been sound.

Judgment affirmed.